UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-20911-CR-BLOOM/TORRES

UNITED STATES OF AMERICA,

v.

JOSE LUIS AGUILAR LOPEZ,

    *Defendant.*

_____/

### REPORT AND RECOMMENDATION ON DEFENDANT'S MOTIONS TO AMEND AND REDUCE SENTENCE

This cause comes before the Court upon Defendant Jose Luis Aguilar Lopez's Motion Pursuant to 18 U.S.C. § 3582 for a Reduction in Sentence [D.E. 312], and related Motion to Amend Sentence [D.E. 311], to which the Government filed a Response in Opposition [D.E. 314]. Defendant moved to hold his motion in abeyance as to his compassionate release arguments, pending a ruling on his motion to amend, in part because he desired to reply to the motion with respect to the compassionate release element. The Court granted the motion to hold in abeyance on March 5, 2024. [D.E. 329]. Therefore, we address only for now the motion to amend in so far as it relates to his request for relief under Amendment 821 Part B as a zero point offender. [D.E. 311].

The Court has reviewed the Motion, the Opposition, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion should be GRANTED.[1]

## I. BACKGROUND

On November 5, 2013, United States law enforcement personnel detected a go-fast vessel in international waters approximately 120 nautical miles southwest of the El Salvador/Guatemala border. The vessel, later identified as the Cristiano Ronaldo, did not display a hailing port and was not flying a national flag. Law enforcement suspected the vessel of engaging in illicit drug trafficking. Once the crew detected the presence of law enforcement, the vessel began to travel at a high rate of speed and failed to obey an order to heave to. The crew then proceeded to jettison bales of what appeared to be contraband. United States law enforcement eventually stopped the vessel by force.

One of the crew members, Defendant Saulo Arahon Hernandez Almaraz, claimed to be the master of the vessel and claimed Guatemalan nationality for himself and the vessel. United States law enforcement contacted the Guatemalan government concerning the detained vessel and the claim of Guatemalan nationality for the vessel. The Guatemalan government could neither confirm nor deny registry of the vessel, and the vessel was deemed a vessel without nationality, and therefore,

---

[1] On February 7, 2024, the Honorable Beth Bloom referred Defendant's Motions to the undersigned Magistrate Judge for disposition. [D.E. 323].

subject to the jurisdiction of the United States. Law enforcement recovered approximately 290 kilograms of cocaine.

Defendant Aguilar and the other crew members of the vessel were charged in Counts 1 and 2 of the indictment with violating Title 46, United States Code, Sections 70503(a) and 70506(b), the prohibition and conspiracy sections of the MDLEA, codified at Title 46, United States Code, Sections 70501-70508. The Defendants, including Aguilar, proceeded to trial on these charges. The master of the vessel went to trial on the additional charge of failing to heave.

After a four-day trial, the jury returned a verdict of guilty on all counts against the defendants including Aguilar. At his sentencing, the Court considered his Presentence Investigation Report [D.E. 163]. The PSI found that the defendant had a Total Offense Level of 36 with a Criminal History Category of I, yielding an advisory guideline range of 188 to 235 months (PSI ¶ 47). On February 13, 2015, after extensive arguments from counsel and after considering all the section 3553 factors, the Court imposed a sentence as to Aguilar at the bottom end of the guideline range: 188 months' imprisonment followed by 5 years' supervised release. The defendant is serving his sentence at Federal Correctional Institute - Pollock, with an anticipated release date of September 5, 2026.

In his current Motions, apart from his compassionate release arguments not at issue here, Aguilar argues that he is eligible for a sentence reduction as a zero-point offender. The government, though conceding that he is eligible under Amendment 821 for reduction in principle, opposes any reduction based on the nature

3

of this case. Specifically, the government points out that the amount of cocaine was "substantial, i.e. 290 kilograms;" that the circumstances of the offense demonstrated a high level of criminal intent, planning and determination (involving the transport of hundreds of kilograms of cocaine across hundreds of miles of open sea in three boats, coupled with the subsequent jettisoning of multiple barrels of cocaine); that those circumstances included fleeing and eluding the Coast Guard requiring forcible arrest; that defendant has never accepted responsibility for his criminal conduct; and that the need to deter others warrants upholding the original sentence.

## II.   LEGAL STANDARD

Ordinarily, "a court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Pubien*, 805 F. App'x 727, 729 (11th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). In the limited instances when a district court does have the authority to modify a term of imprisonment, that authority "is narrowly limited by statute." *United States v. Phillips*, 597 F.3d 1190, 1194-95 (11th Cir. 2010). Therefore, "[t]he law is clear that the district court has no inherent authority to modify a sentence; it may do so only when authorized by a statute or rule." *United States v. Rivas*, 800 F. App'x 742, 745 (11th Cir. 2020) (quoting *United States v. Puentes*, 803 F.3d 597, 605-06 (11th Cir. 2015)).

Here, that statutory authority emanates from 18 U.S.C. § 3582(c)(2), which is a limited and narrow exception to the rule that final sentences are not to be modified. *See United States v. Armstrong,* 347 F.3d 905, 909 (11th Cir. 2003). Specifically, section 3582(c)(2), provides:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . the court may reduce the term of imprisonment, after consulting the factors set forth in section 3553(a) to the extent they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2).

Under section 3582(c)(2), a district court must undertake a two-step process. *See Dillon v. United States,* 560 U.S. 817 (2010). First, the court must determine if the defendant is eligible for relief under this statute. *Id.* at 826–27. The statute authorizes relief only if a retroactive amendment to the sentencing guidelines lowers the defendant's applicable sentencing guidelines range *and* relief is consistent with applicable policy statements. *Id.* The applicable policy statement here bars a court from granting relief below the bottom of the amended guideline range. U.S.S.G. § 1B1.10(b)(2)(A).

Second, if a defendant is eligible for 18 U.S.C. § 3582(c)(2) relief, the court must determine if it will exercise its discretion to reduce that defendant's sentence after it has considered the traditional 18 U.S.C. § 3553(a) factors, *id.* at 826–27, and "the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment." U.S.S.G. § 1B1.10, cmt. n. 1(B).

Under the § 1B1.10(a)(1) policy statement: "[i]n a case in which a defendant is serving a term of imprisonment, and the guideline range applicable . . . has subsequently been lowered as a result of an amendment . . . the court may reduce the

defendant's term of imprisonment as provided by 18 U.S.C. § 3582(c)(2)." And, "if a defendant receives a sentence modification under § 3582(c)(2), subsequent reduction based on the same amendment to the Guidelines is not available—the modified sentence is no longer based on the outdated Guidelines range." *United States v. Caraballo-Martinez,* 866 F.3d 1233, 1240 (11th Cir. 2017). Courts thus cannot "reduce [a] defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) . . . to a term that is less than the minimum of the amended guideline range." U.S.S.G. § 1B1.10(b)(2)(A).

Based on this standard, we proceed to evaluate Aguilar's argument for a sentence reduction under section 3582(c)(2).

### III.  ANALYSIS

#### A.  *Eligibility under Section 3582(c)(2)*

The government concedes that the first threshold for a sentence reduction has been satisfied in Aguilar's case. Under the zero-point offenders amendment, it now "provide[s for] a decrease of two levels from the offense level . . . for defendants who did not receive any criminal history points . . . and whose instant offense did not involve specified aggravating factors." Application to Amendment 821 (Parts A and B, Subpart 1 Only), Amendment to the Sentencing Guidelines, https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202308_RF-retro.pdf. Specifically, a defendant must meet all the following criteria to be eligible for relief:

6

(1) the defendant did not receive any criminal history points from Chapter Four, Part A;

(2) the defendant did not receive an adjustment under § 3A1.4 (Terrorism);

(3) the defendant did not use violence or credible threats of violence in connection with the offense;

(4) the offense did not result in death or serious bodily injury;

(5) the instant offense of conviction is not a sex offense;

(6) the defendant did not personally cause substantial financial hardship;

(7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(8) the instant offense of conviction is not covered by § 2H1.1 (Offenses Involving Individual Rights);

(9) the defendant did not receive an adjustment under § 3A1.1 (Hate Crime Motivation or Vulnerable Victim) or § 3A1.5 (Serious Human Rights Offense);

(10) the defendant did not receive an adjustment under § 3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848.

U.S.S.G. § 4C1.1.

Based on these provisions, the Court agrees with the government that Aguilar is eligible for relief under the "zero-point offender" amendment. First, he was not sentenced at an applicable mandatory minimum term of imprisonment. He was

instead sentenced to 188 months of imprisonment based on an available range of 188 to 235 months. [D.E. 184]. Second, Aguilar was scored with zero criminal history points in his PSI. Third, he meets all the criteria enumerated in paragraphs 2 through 10 above. Finally, after applying a two-level reduction to Aguilar's original offense level of 36, his sentence was not at the bottom of or below the new guideline range for level 34. *See* U.S.S.G. ch. 5, pt. A. His sentence of 188 months falls at the top end of the Offense Level 34 guideline range of 151 to 188 months. *Id.*

Accordingly, under Amendment 821 Aguilar is eligible for a sentence reduction as a zero-point offender. But, again, the Court cannot "reduce [Aguilar's] term of imprisonment under 18 U.S.C. § 3582(c)(2) . . . to a term that is less than the minimum of the amended guideline range." U.S.S.G. § 1B1.10(b)(2)(A).

### B.      *A Sentence Reduction is Warranted by 18 U.S.C. § 3553(a) Factors*

Section 1B1.10(a) directs courts to also consider the factors set forth in 18 U.S.C. § 3553(a) when determining if a zero-point defendant should be granted any sentence reduction. Section 3553(a) lists, among other things, "the nature and circumstances of the offense," "the history and characteristics of the defendant," and "the need for the sentence imposed." 18 U.S.C. § 3553(a)(1)-(2). Moreover, section 3553(a)(2) emphasizes the need to consider "adequate deterrence to criminal conduct," a "reflect[ion] of the seriousness of the offense," "protect[ion] [for] the public from further crimes of the defendant," and "provid[ing] just punishment for the offense."

As the government correctly points out, Aguilar was convicted of a very serious drug offense that was compounded by the attempts made to discard evidence and flee arrest. Those factors, of course, are inherent in the lengthy sentence range prescribed by section 2D.1.1 of the Sentencing Guidelines. Aguilar, however, did not directly participate in the failure to heave that led to the master's conviction. So, it is a bit of a stretch to rely on the failure to heave as a basis to deny a zero-point offender's request for a sentence reduction as contemplated by Amendment 821.

The government insists, however, that the failure to accept responsibility and the need to deter others from similar conduct warrants reimposing the same sentence, which would leave this defendant at a top-end sentence for the revised guideline range for an offense level 34. But the government's argument for a top-level sentence in Aguilar's case is less than convincing. Distribution of 280 kilograms of the cocaine is certainly serious and warrants a meaningful sentence. But in comparison with other similar cases and similar defendants, it is hard to square with the government's insistence that only a 280-month sentence is sufficient under section 3553.

For instance, the government has proposed that a sentence reduction is warranted for a zero-point defendant who helped transport *1,700 kilograms of cocaine. See United States v. Caicedo,* D.E. 92, No. 18-CR-10027-JEM (S.D. Fla. Mar. 12, 2024). And that defendant also participated in an offense that involved a failure to heave and the use of warning shots to force the vessel to stop. The defendant was originally sentenced to a 135-month term based on a total offense level of 33 (135 to

9

168 month guideline range). Despite the extraordinary amount of cocaine involved in that case, roughly six times the amount involved in this case, the government did not oppose a reduction for a revised offense level 31 because "Renteria Caicedo is a first-time, non-violent offender with a limited history of discipline while incarcerated. If the Court finds that these factors, on balance, weigh in favor of a sentence reduction, it can reduce Renteria Caicedo's sentence to as low as *108 months* of imprisonment." (emphasis added).

That defendant faced a much lower sentence, of course, because he decided to plead guilty and obviate the need for a trial, which resulted in the dismissal of one count and a reduction in his offense level based on acceptance of responsibility. But apart from that, the underlying conduct was far more serious than Aguilar's and would, on the surface at least, require a substantially greater sentence. But he likely faces only 108 months while at the very same time the government opposes any reduction in Aguilar's sentence from 188 months. That eighty-month sentence disparity could be skeptically characterized as a trial penalty that the government is seeking to uphold.

Of course, neither defendant is substantially different in character. Both were the product of destitute family backgrounds, Aguilar in Guatemala and Renteria in Colombia, with first and third-grade education levels respectively. With little to no skills, they both tried to make a living as fishermen. But when that trade did not yield them material incomes, they both (wrongly) decided to gamble on the benefits of a drug conspiracy. They were both caught in the same cycle that leaves them and

countless others incarcerated in a United States prison. They are clearly similarly situated and, under the law, deserving of punishment. But the Court cannot discern any material difference between them, under the section 3553(a) factors that are supposed to apply equally to both, to warrant an eighty-month disparity.

Indeed, the sentencing guidelines were designed to treat like people and like offenses equally. *See, e.g., Mistretta v. United States*, 488 U.S. 361, 377–78 (1989) ("Congress has called upon the Commission to exercise its judgment about which types of crimes and which types of criminals are to be considered similar for the purposes of sentencing.") (rejecting constitutional challenge to creation and makeup of sentencing commission). Amendment 821 to the sentencing guidelines should yield the same outcomes to persons who are substantially similar.

Of course, these cases are not substantially similar in the most relevant objective respect. Renteria was engaged in a far more serious offense, based upon the 78 bales and 1700 kilograms of cocaine that he was distributing, as opposed to Aguilar's 270-kilogram haul. But under the guidelines, Renteria benefitted from his decision to plead guilty to the crimes that he was obviously guilty of committing. Aguilar chose a different path and put the government through the constitutional task of proving its allegations before a jury. That has consequences under the guidelines, rightly so. But those consequences are clearly baked into the guidelines themselves and do not require repeated Seventh Amendment lashings from the judicial system, especially in a case like this where the sentencing commission has promulgated special reductions for zero-point offenders.

To buttress this point, take the case of Bryan Nilsen Cortez Gongora. He was convicted of the same drug offense, involving 516 kilograms of cocaine, transported on a vessel that he captained, but pleaded guilty prior to trial. *See United States v. Bryan Nilsen Cortez Gongora,* D.E. 78, No. 17-CR-10004-KMM (S.D. Fla. Mar. 14, 2024). He was sentenced to the low-end of a category 35 offense, which amounted to 168 months incarceration. Under Amendment 821, he requested a reduction and the government has not opposed it. So, he faces a possible 135-month sentence on the adjusted level 33 range, which the government is not recommending but is also not objecting to. If his request is granted, his 135-month sentence for 516 kilograms would be a fifty-three month difference from Aguilar's. But the government would point out that Aguilar is on a different footing because he went to trial, while Cortez decided to plead guilty. The government would be right on that score. The objective facts are, however, that Cortez captained a vessel with twice the amount of cocaine.

Similarly, defendant Enes Cortes Rodriguez is requesting a reduction of his original 135-month sentence for transporting cocaine on a vessel from Colombia carrying *1183 kilograms*. The government is not opposing a reduction in that sentence, which could leave that defendant with an even lesser sentence. *See United States v. Enes Cortes Rodriguez,* D.E. 90, No. 21-CR-20383-KMM (S.D. Fla. Feb. 22, 2024). Again, this defendant pleaded guilty while Aguilar went to trial.

Of course, there are other cases involving zero-point reductions that the government has opposed. In one case, for instance, the defendant had already received the benefit of a substantial assistance motion after pleading guilty, which

12

yielded an already-reduced sentence of 108 months' imprisonment for transporting 580 kilograms of cocaine on a vessel that also attempted to flee. *See United States v. Giancarlo Eduardo Orrala Mejillion,* No. 17-20705-CR-KMM (S.D. Fla. Feb. 22, 2024). Given the already-reduced sentence, the government strongly argued in that case that a 108-month sentence for 580 kilograms of cocaine remained appropriate: "The distribution of controlled substances, particularly in such large quantities, have a profound impact on communities in the United States. The United States request this Court to acknowledge the seriousness of the offenses at issue and the need to deter the defendant and others from engaging in the distribution of controlled substances. A term of 108 months remains sufficient but not greater than necessary to provide sufficient punishment and promote respect for the law."

The government's position in that case seems to make much sense. So, turning back to our case, despite not presenting a convincing showing of particularly unique factors that warrant further punishment, the government insists nevertheless that Aguilar is not entitled to a reduction in his sentence while at the same time acquiescing to a reduction in these other cases involving far more serious criminal conduct. That does not square with Congress's purposes in enacting the sentencing guidelines nor in the Sentencing Commission's adoption of Amendment 821.

To be sure, the government is no doubt taking good faith positions in other cases and, likewise, pursuing a good faith argument in this case. It is not unfair to argue that someone who accepts responsibility and minimizes the cost to the judicial system should stand on firmer footing than someone else who fails to do that. The

Court agrees. So does the Sentencing Commission, which is why Aguilar scored higher than all these other defendants even though his offense, by any objective measure, was substantially less serious than those other failed fishermen. But a reduction in a sentence for a zero-point offender still leaves that disparity in place, without cumulative and unnecessary punishment for those who chose to invoke their Seventh Amendment rights.

Here, the Court concluded at sentencing that Aguilar's offense warranted a low-end sentence in the then-applicable 188-235 month range. Now that the range has been adjusted to a level 34, to a range of 151 to 188 months, his sentence should be adjusted in a commensurate fashion by reducing his sentence to the low-end of the new range, i.e. 151 months. The section 3553(a) factors that apply to him all point in that direction and do not counsel any material change in the Court's sentencing decision now that the range has been adjusted. And we should not lose sight of the fact that, for any person, especially one who had only the benefit of a first-grade education to rely upon, incarceration for over twelve years for committing a serious drug offense represents substantial punishment and should, in an ideal world, deter others in like circumstances from pursuing a similar path. Therefore, a reduction in Aguilar's sentence would still be fully in keeping with the goals and requirements of section 3553(a) while at the same time placing Aguilar in substantially the same position as others who committed similar offenses.

## *IV.   CONCLUSION*

For the foregoing reasons, the Court **RECOMMENDS** that Defendants' Motions to Amend/Reduce Sentence based on a zero-point offender [D.E. 311] be **GRANTED**. The Court recommends a reduced sentence of 151 months' imprisonment.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge.  Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.  28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 23rd  day of April, 2024.

*/s/ Edwin G. Torres*
EDWIN G. TORRES
Chief United States Magistrate Judge